# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JASEN ROME MILLER,

      Petitioner,

v.                                  No. CIV 12-1029 JH/LFG

JAMES JANECKA, Warden,

      Respondent.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1.      This is a proceeding on an application for writ of habeas corpus brought under 28

U.S.C. § 2254, filed October 3, 2012. [Doc. 1.] Petitioner Jasen Rome Miller ("Miller") is currently

confined at the Central New Mexico Correctional Facility ("CNMCF") in Los, Lunas, New Mexico.

He challenges the Judgment, Partially Suspended Sentence and Commitment, entered August 20,

2010, by the Second Judicial District Court in State v. Miller, No. CR 2009-02371 (Bernalillo

County, New Mexico). [Doc. 13-1, Exhibit A.]

---

[1] **Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed. *See, e.g.*, Wirsching v. Colorado, 360 F.3d 1191, 1197 (10th Cir. 2004) ("firm waiver" rule followed in Tenth Circuit holds that a party who fails to object to magistrate judge's findings and recommendations in timely manner waives appellate review of both factual and legal questions).**

2.      Miller raises five grounds for relief in his federal habeas petition:  (1) coerced, involuntary, and unintelligent plea; (2) ineffective assistance of counsel in relation to the plea and other matters; (3) non-disclosure of discovery or evidence; (4)  prosecutorial or governmental misconduct; and  (5) violation of his speedy trial rights.[2]  [Doc. 1, at 5-13; Doc. 15, at 6.]

3.      On January 9, 2013, Respondent James Janecka ("Respondent" or "Warden") filed an Answer, with exhibits. [Doc. 13.] On the same date, Respondent filed a motion to dismiss, with an accompanying memorandum. [Doc. Nos. 14, 15.] On February 27, 2013, Miller filed a reply/response to Respondent's Answer. [Doc. 19.] Also, on February 27, 2013, Miller filed reply or response to the motion to dismiss. [Doc. 20.] On March 11, 2013, Respondent filed a reply in support of the motion to dismiss. [Doc. 21.] On March 26, 2013, Miller filed a request to amend his replies or responses [Doc. Nos. 19, 20]. [Doc. 24.][3]

4.      On April 12, 2013, Miller wrote a letter directly to Respondent's counsel, that Respondent submitted to the Court for filing. [Doc. 26, Ex. A.] Miller's letter asks Respondent's counsel how to file a notice of completion of briefing, and further states "Judge Lucero" had not yet entered an opinion regarding Miller's "petition."  Miller wanted Respondent to "inquire into this" as he did not want default judgment entered.  There is no need to respond to the letter, nor does Miller have to file a notice of completion of briefing.  The Court considers this matter fully briefed and ready for resolution.  While the Court does not know who "Judge Lucero" is, if Miller is

---

[2]In addition to requesting that his conviction be set aside and his record cleared, Miller sought damages.  The claim for damages was dismissed. [Doc. 4.]

[3]Miller apparently included some pages in one filing that should have been attached to the other filing, both of which were filed the same day. [Doc. 24.] Respondent noted that he reviewed all of Miller's pleadings in briefing the motion to dismiss and did not object to Miller's request to amend or correct his filings. [Doc. 25.] The Court grants Miller's request to amend.

referring to the present habeas petition assigned to United States District Court Judge Judith Herrera and referred to undersigned Magistrate Judge Lorenzo F. Garcia, there is no issue regarding the entry of default judgment. The Court issues these recommendations, to which Miller can object, as noted *supra* at page 1, footnote 1.

5.      In the motion to dismiss, Respondent argues that Miller's habeas relief is foreclosed due to Miller's "unconditional entry of knowing and voluntary guilty and no contest pleas in state court." [Doc. 15, at 1.] In addition, Respondent asserts that the habeas petition is subject to dismissal with prejudice under 28 U.S.C. § 2254(d).

### Factual and Procedural History[4]

6.      On May 12, 2009, Miller was charged in a 13-Count Grand Jury Indictment with criminal sexual penetration ("CSP") in the first degree of a child under 13; criminal sexual contact in the second and third degree of a child under age 13; kidnapping; sexual exploitation of a child (manufacture and possession of an obscene visual or print medium); and bribery of a witness through threats or bribes. [Doc. 13-1, Ex. C.] The charges arose out of alleged conduct occurring in 2007. On May 26, 2009, Miller was arraigned. He was released on his own recognizance. [Doc. 13-11, Ex. CC, at ¶ 3.]

### *Speedy Trial History*

7.      On June 3, 2009, attorney Michael Rosenfield ("Rosenfield") entered an appearance on behalf of Miller and demanded a speedy trial. [Doc. 13, Ex. BB (State court docket sheet, at 8).] On June 19, 2009, co-counsel Irma Rivas entered an appearance for Miller. [Id.] The 6-month,

---

[4]The recitation of the factual and procedural background is taken from the parties' exhibits to pleadings. *See, e.g.,* Doc. 13, exhibits.

speedy trial rule, Rule 5-604 NMRA ("the Rule"), in Miller's case expired on November 26, 2009. [Doc. 13-11, Ex. CC, at ¶ 11.]

8.      On October 22, 2009, the parties met for a pretrial conference, at which time Defendant stipulated to a 3-month extension of the Rule.  [Doc. 13-11, Ex. CC, at ¶ 9.]  Rosenfield's cancellation of law enforcement/social services interviews scheduled for September 22, 2009, and defense counsel's intention to conduct interviews with the alleged victim and family first, may have prompted, in part, Defendant's agreement to a 3-month extension of the Rule. [Id., Ex. CC, at ¶ 8.] However, on November 20, 2009, the State sought an extension that exceeded Defendant's 3-month stipulation, specifically requesting an extension of the Rule until May 26, 2010. [Id.. Ex. CC, at ¶ 9, at 2.]  On November 20, 2009, Second Judicial District Court Judge Stan Whitaker granted the parties' partially stipulated motion to extend time, permitting an extension of the Rule until March 26, 2010.[5] [Id., Ex. DD.]  Judge Whitaker scheduled the trial to begin on March 22, 2010. [Id., Ex. CC, at  ¶ 10.]

9.      On January 29, 2010, Defendant filed a motion to exclude witnesses and evidence. [Doc. 13-7, Ex. W, at 19.] In the motion, Defendant stated that he informed the State that he did not want to interview certain witnesses, as scheduled on September 22, 2009, because the defense did not have all the necessary information.  The State's counsel then canceled the scheduled interviews "per your [Defendant's] request."  According to Miller's motion, defense counsel continually attempted to contact the State to arrange the interviews, but usually did not receive a response. [Id., at ¶¶ 7, 8, 10-16.] Finally, on January 6, 2010, the State's attorney responded to one of Defendant's

_____

[5]The State court's order may contain a typographical error, intending to extend the Rule until *May* 26, 2010, as requested, rather than March 26, 2010.  However, it is not entirely clear based on the State court's trial setting of March 22, 2010.

email inquiries, by sending some discovery and indicating that January 28 and 29 should be designated for interviews of civilians and "cop-types." [Id., at ¶ 16.] But, according to Defendant, all subsequent attempts to confirm those dates and times of interviews were unsuccessful. [Id., at ¶¶ 18-21, 23-27.]  The interviews did not take place on January 28 and 29, and the State never notified Defendant that the interviews would not occur on those dates.  Because trial was set then for March 22, 2010, and Defendant could not interview the witnesses and argued he did not receive necessary discovery as of late January, he moved the court to exclude the witnesses not made available for interviews and exclude evidence not provided.

10.     On March 4, 2010, Judge Whitaker entered an Order on Miller's motion to exclude witnesses, requiring that the pretrial interviews of all witnesses named by the State take place by April 16, 2010, and that all evidence the State intended to rely on be disclosed no later than April 16, 2010. [Doc. 13-11, Ex. EE.] According to information provided in the State's subsequent petition to extend the Rule, the parties appeared in court on March 2, 2010, for a motion hearing on various defense motions.  At the hearing, Judge Whitaker indicated that the court would grant the State's motion to continue the March 22, 2010 trial setting, and the State's petition to extend the Rule, which then was set to expire on March 26, 2010. [Id., Ex. FF, at ¶¶ 17, 18.] The State court entered an Order on March 29, 2010, granting the State's *opposed* request for an extension of the Rule until June 26, 2010; the trial was scheduled June 14, 2010.[6] [Id., Ex. FF; Ex. GG.]

11.     On April 16, 2010, the parties filed a stipulated motion for extension of time to complete discovery and pretrial interviews. [Doc. 13-11, Ex. HH.] While the parties had scheduled pretrial interviews with State witnesses on March 31, 2010, they were not completed on that date.

---

[6]It appears from attachments to filings that some witness interviews were conducted in March 2010. [Doc. 13-7, Ex. W, attachment; Doc. 20, at 11.]

Moreover, due to a pending substitution of the State's counsel, "the parties agreed to delay the scheduling of pretrial interviews until a new attorney was assigned to the case." [Id., at ¶ 1.] On April 5, 2010, a new ADA, Lara C. Sunderman, took over prosecution of the case. [Id., at ¶ 2.] The attorneys attempted to schedule the remaining interviews before April 16, 2010, but defense counsel was not available.  The parties set the week of April 19-23, 2010, to conduct interviews.  The stipulated motion requested an extension from April 16, 2010 to April 30, 2010 to conduct interviews.

12.     On April 22, 2010, Miller filed a motion to dismiss Counts 7 through 12, arguing that the State did not provide evidence to support some of its preliminary statement of facts with respect to specific charges.  Judge Whitaker initially set a hearing on May 20, 2010, that was re-set on June 7, 2010. [Id., Ex. BB, at 6.] On June 7, 2010, the State filed a response to the motion, indicating that some of the photographic evidence in support of said counts was inadvertently lost by law enforcement or that Miller allegedly deleted the photographs from his cell phone. [Doc. 13-11, Ex. JJ.]  Based on various arguments, the State contended the motion should be denied.

### *Plea Proceedings and Related Motions*

13.     It is not clear from the docket sheet if the parties appeared at a June 7, 2010 hearing to argue the motion.[7]  On June 14, 2010, Miller pled guilty to the offenses of criminal sexual contact with a child under the age of 13 (Count 4); kidnapping (Count 5); and bribery of a witness through threats (Count 13.) [Id., Ex. BB, at 5.] He pled no contest to two counts of sexual exploitation of a

---

[7]The Court requested that Respondent provide a copy of the transcript of the June 14, 2010 plea hearing. [Doc. 29.] On May 29, 2013, Respondent filed the plea hearing transcript ("June 14 Plea Hearing Tr.") which the Court also reviewed in preparing these findings and recommendations. That transcript indicates that the State court conducted a hearing the week before June 14 and that the court dismissed some counts while others remained. [June 14 Plea Hearing Tr., at 13-14.]

child (possession) (Counts 10 and 11). [Doc. 13-1, Ex. B; June 14 Plea Hearing Tr. at, 2, 18-29, 23-24.]  Counts 1, 2, 3, 6 and 12 of the criminal indictment were dismissed as a result of the plea agreement.  The state docket sheet reflects that Counts 7, 8, and 9 were dismissed on January 6, 2011. [Doc. 13-11, Ex. BB, at 1-2, 4.]

14.     On August 19, 2010, Judge Whitaker sentenced Miller to a total term of imprisonment of 21 years, 13 years suspended, with the result that Miller was sentenced to a 8-year term of incarceration.  Judge Whitaker also ordered Miller to serve a post-incarceration term of supervised probation, between 5 and 20 years. [Doc. 13-1, Ex. A, at 2-3.] On August 20, 2010, the State court entered the Judgement, Partially Suspended Sentence and Commitment. [Id., Ex. A.]

15.     On September 7, 2010, an Order of withdrawal/substitution of defense counsel Rosenfield was entered. [Doc. 13-11, Ex. BB, at 4.]

16.     On January 31, 2011, Miller, acting *pro se*, filed a "Motion for Withdrawal of Plea; and Disposition Agreement in accordance with Rule 93, NMRA." [Doc. 13-1, Ex. D.] Miller argued that he pled guilty to Counts 4, 5 and 13, and no contest to Counts 10 and 11, of the indictment "on the presumption of leniency of sentence[.]" [Id., Ex. D, at 1-2.] He further asserted that he was coerced by counsel to accept a plea of guilty to Counts 4, 5 and 13, and to accept a "modified plea of no contest" to Counts 10 and 11 "in the belief that worse consequences would befall the Defendant otherwise." [Id.] Miller also claimed that he was given an "unrealistic time frame of 24 hours to fully and properly consider plea and disposition of agreement," and that he maintained claims of innocence and attempted to prove such through filing motions to dismiss.  Miller further asserted that his attorney provided ineffective assistance and failed to properly represent Miller during the proceedings. [Id.]

17.     On the same day, January 31, 2011, Judge Whitaker entered an Order denying the motion for withdrawal.  The Order found Miller provided insufficient grounds to warrant the relief he requested. [Id., Ex. E.]

18.     On April 13, 2011, Miller filed a second *pro se* motion to withdraw his plea and disposition agreement. [Id., Ex. F.] The first part of the motion sets out the same grounds Miller presented in the January 2011 motion.  The second motion also contends that Miller made an "involuntary/unintelligent plea" and further claims:

> that Defendant showed signs of being involuntarily cohearsed [sic] by counsel during arraignment and sentencing by trying not to plead guilty, and showing physical signs of duress; and, that counsel informed Defendant that a sentence of only probation would be the most likely outcome as long as Defendant made a compelling and convincing confession before the Court using information obtained during Pre-Trial and Discovery.

[Id., at 5, 6-7.] Miller stated that his guilty plea was induced by an "unkept promise of leniency." [Id., at 7.] According to Miller, he believed that only probation or some other "appropriate relief" would be imposed.  He stated that the "[t]rial court's refusal to follow sentencing recommendation of D.A. constitutes a rejection of 'Plea Agreement' under Rule and an opportunity to withdraw plea is required." [Id., at 7-8.]

19.     On April 13, 2011, Judge Whitaker entered a 1½ page Order denying Miller's second motion to withdraw his plea agreement.  Judge Whitaker noted that he took Miller's plea in open court on the date that the jury trial was scheduled to begin.  In the Order, Judge Whitaker summarized discussions that occurred during the plea hearing:

> . . . including, but not limited to, the sentencing agreement listed in the agreement and as to whether petitioner was being pressured, feeling forced, or coerced in any way to enter into the agreement with Respondent.  Petitioner indicated that he was not being pressured, feeling forced or coerced and in fact indicated, on the record, that he

> was entering the agreement of his own volition.  Additionally, Petitioner was asked whether he was promised anything that was not already contained in the plea agreement to which the petitioner indicated in the negative.
>
> On the day set for jury trial in this matter petitioner had the choice of going forward with his constitutional right to a jury trial or pleading guilty and/or no contest to charges in the case.  The petitioner, before this court, chose to enter a plea instead of exercising his right to jury trial and by doing so bound the court to the terms of the agreement.

[Id., Ex. G.] Judge Whitaker concluded that Miller's claims were unwarranted and unfounded, and he, therefore, denied the motion without a hearing.

20.     Miller did not directly appeal his conviction.  He stated that he did not qualify for an appeal due to having entered a guilty plea. [Doc. 13-1, Ex. H, at 5.]

### *State Habeas Proceedings, Subsequent Motions and Petitions for Writ of Certiorari*

21.     On August 26, 2011, Miller, acting *pro se*, filed a petition for writ of habeas corpus in Second Judicial District Court. [Doc. 13-1, Ex. H.] Ground one of the state habeas petition alleged that some of the evidence, specifically photos of the victim, were lost.  Miller claimed those photos were the main and "ultimately only evidence" in support of charges against him.  [Id., Ex. H, at 3.] Ground two alleged denial of effective assistance of counsel by Rosenfield, who allegedly told Miller to "write a confession to PSR so I'd get a lesser sentence.  He told me it was the Only way to get the judge to be lenient on me.  He didn't tell me that the State lost evidence." [Id.] Ground three also asserted ineffective assistance of counsel on grounds that Rosenfield did not allow Miller to see the full discovery, specifically the pretrial interview transcripts that Miller saw only after sentencing.  Grounds four-six raised additional claims of ineffective assistance of counsel, including that Rosenfield allegedly refused to assist Miller in withdrawing his plea during the initial 90 days after sentencing even though Miller called and wrote Rosenfield numerous times.  Miller also

alleged that Rosenfield only gave him "6 hours" to consider the plea offer on the day of trial.  Miller asserted that Rosenfield told him to take the plea "even though State had no justifiable evidence against me – and the judge had ordered the state to find something within 45 days or he would dismiss the case – the day I took the plea was the day the 45 day extension expired – I didn't know and wasn't told that if I didn't take the plea, the case would be dismissed." [Id., Ex. H, at 3a.] Ground seven alleged unconstitutional failure of the prosecution to disclose evidence favorable to Miller and his defense.  Ground eight asserted that Miller's plea was not made with understanding of the nature of the charge "as well as the requirement to register as a sexual offender for life." Miller claimed not to have known of these consequences.  Ground nine contended that Miller did not want to plead guilty, but that his attorney said it was the only way to get a lesser sentence, and that counsel said he "probably wouldn't have won my case considering he lost 12 other cases with similar or at least general sex charges." [Id., Ex. H, at 3b.]

22.     On August 26, 2011, Judge Whitaker entered an Order denying Miller's habeas petition.  He wrote that "the Court indicated findings and reasons for the denial in prior orders for similar requested relief by Petitioner Miller (See Order filed April 12, 2011)." [Doc. 13-1, Ex. I.]

23.     On October 28, 2011, the New Mexico Supreme Court granted Miller's motion for extension of time to file a petition for writ of certiorari. [Doc. 13-1, Ex. J.]

24.     On November 18, 2011, Miller filed a *pro se* Petition for Writ of Certiorari. [Doc. 13-2, Ex. K.] Miller raised multiple issues, including whether the State court properly denied his habeas petition and whether he voluntarily and intelligently entered into the plea agreement.  Miller also set out claims concerning alleged ineffective assistance of counsel, judicial bias, and prosecutorial misconduct.

25.     On November 29, 2011, the New Mexico Supreme Court ordered the State to respond to Miller's petition by December 12, 2011. [Doc. 13-2, Ex. L.]

26.     On January 12, 2012, the State filed its response and objections to Miller's petition for writ of certiorari. [Doc. 13-2, Ex. M.] The State argued, in part, that Miller's petition should be denied as untimely.  Judge Whitaker's Order denying relief on the habeas petition was entered on August 26, 2011.  Any request for an extension was due by September 26, 2011, but Miller did not seek an extension until October 27, 2011, 31 days after the deadline.  In addition, or alternatively, the State argued that Judge Whitaker properly denied habeas relief.

27.     On January 23, 2012, the New Mexico Supreme Court, having considered the petition and response, denied it. [Doc. 13-2, Ex. N.]

28.     It appears that Miller filed a motion for rehearing on about February 6, 2012, although the exhibit does not contain a stamped file-date. [Doc. 13-3, Ex. O.] Miller asserted, in part, that he was unable to timely file a reply in support of his petition for writ of certiorari because he did not receive the State's response until it was too late. [Id.] Thus, he contended that the New Mexico Supreme Court did not have all the facts before it.  His motion for rehearing raised essentially the same argument asserted in the petition for writ of certiorari.

29.     On February 27, 2012, the New Mexico Supreme Court, having considered Miller's motion for rehearing, denied it. [Doc. 13-3, Ex. P.]

30.     It appears that Miller filed a third motion to withdraw plea on about March 30, 2012. The exhibit attached to Respondent's answer does not contain a file-stamped copy of the motion, but an Order, entered that same day, refers to Miller's motion. [Doc. 13-4, Ex. Q, R.] In the motion, Miller, stated he had served 19 months of his sentence as of the date he filed this motion.  He raised similar argument that he was denied discovery and denied effective assistance of counsel.  Miller

11

claimed he was unaware of the severity of the "lasting, life long consequences of registration [as a sex offender]." Had he known of those consequences, he would not have entered into the plea agreement. [Id., Ex. Q, at 2.] Miller again argued his attorney coerced him into accepting the plea agreement by leading him to believe "probation would be the only outcome." In support of that position, Miller cited a portion of the plea agreement discussing probation. However, he omitted other portions of the plea agreement specifically setting out Miller's agreement with the State regarding his sentence of a "total term of twenty-one (21) years, with a CAP of eight (8) years of incarceration at initial sentencing." [Doc. 13-1, Ex. B, at 2 ("Terms"). Miller further stated that on "June 7, 2010 – prior to the hearing, counsel informed Petitioner that 'he [counsel] had lost (12) other cases with similar charges, and that if I [Mr. Miller] went to trial (as planned) then there was a 90% chance of lossing [sic] regardless of the lack of evidence.'" [Doc. 13-4, Ex. Q, at 4.]

31.   On March 30, 2012, the State court entered an order on Miller's third motion of withdrawal of his plea. The court observed that Respondent mailed the third motion to the court on March 27, 2012, and that the motion was filed on March 30, 2012. Judge Whitaker stated he reviewed the first two motions to withdraw plea, along with this third motion. He further reviewed the court file and pleadings, along with the plea transcript of June 14, 2010. Judge Whitaker concluded that the third motion mirrored arguments raised in the first two motions, determining that the motion was not well-taken and subject to denial. [Doc. 13-4, Ex. R.] The State court set forth the following discussion:

> Review of the Plea and Disposition Agreement signed by the Respondent [sic] and his counsel (Mr. Michael Rosenfield); review of the Plea Hearing transcript of June 14, 2010 and the colloquy between the judge and [Miller], all reveal that [Miller] was questioned thoroughly regarding whether he was promised anything not discussed in the hearing or contained in the Plea Agreement and

whether he was entering into the agreement with the State voluntarily.

Additionally, at the plea hearing on June 14, 2010, [Miller] was advised with counsel that he would be required to register as a sex offender as a result of entering into the plea agreement and what that entailed. Furthermore, [Miller] entered into the plea in open court on the day that the case was set for jury trial. [Miller] chose to forgo his right to a jury trial and proceed with the plea. It is the Court's determination that [Miller] entered into the plea agreement knowingly and voluntarily.

[Doc. 13-4, Ex. R, at 1-2.]

32.     On April 16, 2012, Miller filed a motion for rehearing. [Doc. 13-4, Ex. S.] Miller raised the same arguments as alleged in earlier filings. He further stated that he filed a complaint against Rosenfield with the disciplinary board and was awaiting a response. He argued that despite "speedy trial demand time limits expiring," the State failed to produce evidence to support the charges. Miller asserted that the State court ordered the State to find "new evidence within 45 days" or the case against Miller would be dismissed. According to Miller, at a hearing on June 7, 2010, the State admitted to finding no new evidence. Miller continued to argue that he satisfied the two-prong showing required to demonstrate ineffective assistance of counsel under Strickland v. Washington.

33.     On April 16, 2012, Judge Whitaker entered an Order denying Miller's April 2012 motion for rehearing. The court noted that Miller restated the same arguments and sought the same remedy as he requested in his earlier motions. However, after careful review of the court file, pleadings, plea agreement, all prior court orders, Judge Whitaker found "no legal basis or authority to grant the requested relief by Petitioner in his latest motion." [Doc. 13-4, Ex. T.]

34.     On May 9, 2012, Miller filed another Petitioner for Writ of Certiorari in the New Mexico Supreme Court. [Doc. 13-5, Ex. U.] Miller presented the same arguments that he raised in

earlier filings.   He also claimed he was improperly denied appointment of counsel and was prejudiced by a delay of nearly 15 months in being brought to trial.

35.    On May 24, 2012, the New Mexico Supreme Court, after considering Miller's Petition, denied it. [Doc. 13-6, Ex. V.]

36.    On July 19, 2012, Miller filed a second *pro se* state habeas petition. [Doc. 13-7, Ex. W.] Miller raised arguments of ineffective assistance of counsel, non-disclosure of discovery, speedy trial violations, and prosecutorial misconduct.   Miller asserted that Rosenfield did not disclose a polygraph test of Miller as exculpatory evidence.    Miller set forth allegations about witness interviews in this petition.   He further claimed that the court's order did not specifically address all of his allegations and claims.

37.    On July 19, 2012, Judge Whitaker entered an Order denying Miller's second habeas petition, stating that the denial was supported by the same reasons set out in previous orders denying "the same."  "See more specifically this Court's Order file stamped April 11, 2012." [Doc. 13-8, Ex. X.]

38.    On August 2, 2012, Miller filed a motion for extension in the New Mexico Supreme Court that was granted. [Doc. 13-8, Ex. Y.]

39.    On August 10, 2012, Miller filed another petition for writ of certiorari.  He set out the same arguments and further alleged bias against him.  In support of some of these most recent filings, Miller attached portions of transcripts of witness interviews that do not appear particularly favorable to him. [Doc. 13-10, Ex. Z.]

40.    On August 24, 2012, the New Mexico Supreme Court again denied Miller's petition. [Doc. 13-11, Ex. AA.]

**Exhaustion of State Remedies**

41.     Before a federal court can consider habeas claims, Miller first must present his claims to a state court and exhausts state remedies, unless "there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A).   *See* Cone v. Bell, 556 U.S. 449, 465-66 (2009) (acknowledging "the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court").

42.     The exhaustion doctrine reflects the policies of comity and federalism between state and federal governments, a recognition that "'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." Demarest v. Price, 130 F.3d 922, 932 (10th Cir. 1997) (*quoting* Picard v. Connor, 404 U.S. 270, 275 (1971)).

43.     In order to exhaust a claim, Miller must "fairly present" each habeas claim in the appropriate State court, "thereby alerting that court to the federal nature of the claim." *See* Baldwin v. Reese, 541 U.S. 27, 29 (2004) (*quoting* Duncan v. Henry, 513 U.S. 364, 365–66 (1995) (*per curiam*)).   *See also* Wilson v. Workman, 577 F.3d 1284, 1294 (10th Cir. 2009) (*en banc*) ("The allegations and supporting evidence must offer the state courts a fair opportunity to apply controlling legal principles to the facts bearing upon [petitioner's] constitutional claim.") (quotation omitted); Prendergast v. Clements, 699 F.3d 1182, 1184 (10th Cir. 2012) (in determining whether a claim was exhausted, the crucial inquiry is whether the "substance" of the petitioner's claim was presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim) (internal citations omitted).

44.     The state petitioner bears the burden of proving that he exhausted State court remedies.  McCormick v. Kline, 572 F.3d 841, 851 (10th Cir. 2009);  Hernandez v. Starbuck, 69 F.3d 1089, 1092 (10th Cir. 1995), *cert. denied*, 517 U.S. 1223 (1996).

45.     Respondent does not expressly dispute the issue of Miller's exhaustion.   In Respondent's Answer, he states that he "believes" that Miller sufficiently presented his claims to state courts – "if just barely so – to alert the state courts that he was raising claim[s] of federal constitutional dimensions." [Doc. 13, at ¶ 19.] At the same time, Respondent "reserve[d] the right to respond to any issue regarding exhaustion[,]" should Miller amend the habeas petition or if this Court interprets the question of exhaustion differently.  Miller did not amend his petition, and the Court concludes that Miller sufficiently demonstrated exhaustion of his claims.

## Adjudication of Claims on Merits

46.     Before reaching Miller's habeas claims, the Court first determines whether the State court adjudicated the claims on the merits.  Judge Whitaker entered numerous Orders denying Miller's many motions.  In denying Miller's second motion to withdraw his plea, Judge Whitaker noted that he took Miller's plea in open court and questioned Miller about the terms of his plea negotiations.  In the Order, Judge Whitaker set out the substance of the plea colloquy in detail, and then determined that Miller's claims were unwarranted and unfounded.  [Doc. 13-1, Ex. G.] In response to Miller's first state habeas petition, Judge Whitaker entered an Order denying the petition and referring to findings and reasons set out in prior orders for similar relief requested by Miller. [Doc. 13-1, Ex. I.] Judge Whitaker entered an Order in March 2012, denying Miller's third motion for withdrawal of plea.  The State court judge indicated that he reviewed the first two motions to withdraw plea, as well as the third motion.  He also reviewed the court file, pleadings, and June 14, 2010 plea transcript before denying the third motion.  Judge Whitaker concluded that the third

motion set forth the same arguments raised in the first two motions.  Again, however, Judge

Whitaker indicated that the State court thoroughly questioned Miller in open court regarding the

terms of his plea agreement and whether he entered into the plea voluntarily.  The court stated that

Miller was advised that he would be registered as a sex offender as a result of the plea agreement.

During the plea hearing, Miller expressly elected to forgo his right to a jury trial and proceed with

his plea. [Doc. 13-1, Ex. R.] After Miller filed a motion for rehearing, Judge Whitaker entered

another Order, stating that he carefully reviewed the court file, pleadings, plea agreement, all prior

Orders, but found "no legal basis or authority to grant" the relief Miller sought. [Doc. 13-4, Ex. 5.]

Miller filed yet another motion, and the Second Judicial District Court entered an Order denying the

request, and referring to prior Orders and the reasoning in those Orders.  [Doc. 13-8, Ex. X.]

47.     The State court's orders did not "summarily" deny Miller's motions and habeas

petitions.  Judge Whitaker made specific findings regarding Miller's claims, and reviewed the

pertinent pleadings, transcripts, and motions.   Moreover, this is not a case where the State court

merely entered a single, one-line Order denying relief, nor is this a case where the court denied

Miller's claims on technical defects or procedural irregularities.  Rather, the State court reviewed

the entire district court record, on more than one occasion, in denying Miller's requested relief.

Thus, the State court considered Miller's claims on the merits.

48.     Even if the State court's denials of Miller's motions and petitioners are viewed as

summary, a court's summary dismissal of a habeas petition constitutes an adjudication on the merits.

Aycox v. Lytle, 196 F.3d 1174, 1177-78 (10th Cir. 1999) (affording deference under the AEDPA to

state court's rejection of claim's merit, despite lack of any reasoning); Weeks v. Angelone, 176 F.3d

249, 259 (4th Cir. 1999), aff'd, 528 U.S. 225 (2000) (same).  See also Wright v. Angelone, 151 F.3d

151, 157 (4th Cir. 1998) (refusing to presume that a summary order indicated a cursory or haphazard review of a petitioner's claims).

49.     The Court concludes that the claims Miller raises in this federal habeas proceeding were adjudicated on the merits in State court.  The Court proceeds to address the claims.

**Discussion**

50.     Respondent urges, as an initial matter, that Miller's plea forecloses federal habeas relief due to Miller's knowing and voluntary entry of unconditional pleas of guilty or no contest. [Doc. 15, at 7-10.] In support of this position, Respondent relies on Blackledge v. Allison, 431 U.S. 63, 74 (1977) and United States v. McKinney, 477 F. App'x 497, 499-500 (10th Cir. 2012). "Solemn declarations in open court [affirming a plea agreement] carry a strong presumption of verity." McKinney, 477 F. App'x at 499.  Such statements, however, do not absolutely bar post-conviction relief because a defendant could still claim that his representations at the plea hearing were "so much the product of . . . misunderstanding, duress, or misrepresentation they rendered his guilty plea a constitutionally inadequate basis for imprisonment."  Id. (citation omitted).

51.     In Levy v. Simmons, 125 F. App'x 225, 226-27 (10th Cir. Feb. 22, 2005) (unpublished), the Tenth Circuit held that the petitioner's guilty plea foreclosed federal habeas review of the alleged pre-plea deprivations.  In Levy, the petitioner's claims related to alleged constitutional errors all occurring before entry of his guilty plea-admission.   Under those circumstances, the District Court concluded that his federal habeas claims were barred to the extent his guilty plea was knowingly and voluntarily entered.  Id. at 226 (citing Tollett v. Henderson, 411 U.S. 258, 267 (1973)) ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty . . . , he may not thereafter raise independent claims relating to the deprivation of

18

constitutional rights that occurred prior to the entry of the guilty plea.").  In other words, once a defendant pleads guilty, he can attack the voluntary and intelligent nature of the plea, but allegations of claims that predated the guilty plea are foreclosed.  *See* id. at 226-27 (Court found Levy knowingly and voluntarily accepted the guilty plea; thus, all claims that predated the guilty plea were foreclosed).

52.    Here, the Court first determines if Miller entered into his plea voluntarily and knowingly.  After making that determination, the Court decides whether any claims are foreclosed due to Miller's voluntary and knowing plea.

53.    Even if the Court concludes that Miller voluntarily and knowingly entered guilty and no contest pleas, the Court does not agree that all of Miller's federal habeas claims are foreclosed.  For example, Miller essentially challenges his trial counsel's performance during plea negotiations and alleges that as a result of his attorney's deficient representation, his guilty plea was "a constitutionally inadequate basis for imprisonment."  In Johnson v. Atherton, 296 F.3d 991, 993 (10th Cir. 2002), the Tenth Circuit noted that "a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the *pretrial* proceedings."  (*citing* Lefkowitz v. Newsome, 420 U.S. 283, 288 (1975)) (emphasis added).  The circuit court further observed that this bar applied to claims of ineffective assistance of counsel that did not implicate the voluntariness of the plea.  Id. (citation omitted).  The Tenth Circuit concluded that if a claim of ineffective assistance of counsel implicated the voluntariness of the plea, there was a legitimate claim.  Id. (citation omitted).

## I.    VALIDITY OF GUILTY AND NO CONTEST PLEAS

54.    A trial judge may not accept a guilty plea without an affirmative showing that the petitioner's plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242 (1969).  *See*

United States v. Hahn, 261 F. App'x. 90, 92 (10th Cir. Jan. 15, 2008) (unpublished) ("[a] defendant's guilty plea must be knowing, voluntary, and intelligent."), *cert. denied*, 555 U.S. 891 (2008).  This standard is satisfied only if the defendant has "a full understanding of what the plea connotes and of its consequences." Id. (*quoting* Boykin, 395 U.S. at 244).  *See also* Bradshaw v. Stumpf, 545 U.S. 175, 182–83 (2005) (defendant must know the nature of the charges against him as well as the likely consequences of his plea).  In determining whether the plea was voluntary, the record need not show an enumeration of specific rights waived and elements charged, but it must show that the plea was voluntary and intelligent.  United States v. Davis, 929 F.2d 554, 557 (10th Cir. 1991).  A guilty plea will be found void if it was "induced by promises ... which deprive it of the character of a voluntary act."  Wellnitz v. Page, 420 F.2d 935, 936 (10th Cir. 1970) (quotation omitted).  Further, an allegation that a defendant's plea "was based on grossly inaccurate advice about the actual time he would serve in prison" gives rise to "a colorable claim of a constitutional violation."  Gonzalez v. Crosby, 545 U.S. 524, 542 (2005).

55.     Here, Miller summarily contends that his pleas of guilty and no contest were "involuntary, coerced, and unintelligent." [Doc. 20, at 2, 10; 20-1, at 6.] He argues that his trial attorney directed him what to say at the plea hearing and "adjusted the wording to suit his mannerism." [Doc. 20, at 10.] Miller claims he was "led to believe that the plea would be thrown out or the eight (8) year CAP be disregarded unless such a statement was made." [Id.] Miller further asserts that his trial attorney told him there was a "90% chance of losing at trial," which could result in a 64-year sentence. [Id.] Miller claims never to have wanted to accept a plea; he asserts innocence as well. [Doc. 20-1, at 12.]

56.     The June 14 Plea Hearing Transcript flatly contradicts Miller's allegations.  At the hearing, counsel and Miller appeared.[8]  Judge Whitaker asked counsel if they were proceeding to trial that day or the next, as the trial was set to begin. [June 14 Plea Hearing Tr., at 2.] The Assistant District Attorney ("ADA") noted that he believed they had reached a plea agreement and then described to what charges Miller would plead guilty.  The ADA explained that the counts would run consecutive to each other, for a total term of incarceration of 21 years, "with a cap of eight years at initial sentencing." [Id., at 3.] When told that the parties agreed Miller would not receive a conditional discharge under the agreement, Judge Whitaker assured counsel that he would not "give you a conditional discharge anyway, Mr. Miller, unfortunately." [Id.] The DA observed that the plea paperwork included "an indeterminate period of probation between 5 and 20 years, as well, which would be applicable, as well as sex offender registration." [Id.] Judge Whitaker stated that if the parties were "capping me at eight [years] . . . then probably a PSR would be smart." [Id.] Miller was present for all of these discussions.  The court discussed the charges against Miller and whether the State had a factual basis for all of the charges.   The court also clarified which charges were dismissed. [Id., at 8-9.]

57.     The court then swore in Miller and asked whether, based on the representations of counsel Miller heard that morning, he had a chance to go over the entire written plea agreement with his attorney.  Miller stated he had gone over it that day with counsel and had signed it. [Id., at 10-11.] Miller testified he had a chance to have all questions answered that he might have about the agreement and had a full understanding of what the plea agreement meant to him. [Id., at 11.]

_____

[8]Attorney Cindy Leos appeared on behalf of Miller at the June 14 plea hearing.  Attorney Rosenfield was unavailable that day, but Ms. Leos told the court that Mr. Rosenfield did not have to be present for the plea hearing that day. [June 14 Plea Tr., at 4.]

58.     Judge Whitaker asked Miller the following questions:

Court:      Is anybody forcing you to enter in to this plea agreement this morning, Mr. Miller?

Miller:     No.

Court:      Are you doing this of your own free will and volition?

Miller:     Yes.

Court:      Are you under the influence of anything this morning that would prevent you from fully understanding what we are doing here?  And that would be any kind of prescription medication, any kind of illicit substance, or any alcoholic beverage of any kind.

Miller:     No.  No.

Court:      I know your counsel has explained to you – and we're here today for trial, and we're ready to proceed with the trial tomorrow morning, but I believe your counsel has explained to you that you have a right to a trial and that you have a right to put the State to the task of proving these allegations against you beyond a reasonable doubt.  Do you understand that?

Miller:     Yes.

Court:      You have the right to have your counsel . . . cross-examine any witnesses the State would put up against you at a trial in this matter, as well as put forth any defenses to these allegations that you feel, with your counsel, that you want to present . . . . [You have the right of] even testifying, yourself, at trial. Do you understand that?

Miller:     Yes.

Court:      You would also have the right to maintain silence and your Fifth Amendment right to not participate at all and make the State do all of the work to prove this to a jury beyond a reasonable doubt.  do you understand that?

Miller:     Yes.

Court:      Finally, you would have the right to appeal any conviction that you might receive if this case were to proceed to trial and you were convicted of any of the charges.  Do you understand that?

Miller:     Yes.

| Court: | But you are giving all of those rights up if you're going to plead guilty this morning. Do you understand that? |
|---|---|
| Miller: | Yes. |

[Id., at 10-13.]

59.    Miller then asked the court several questions about two of the charges against him and the dismissal of certain charges. [Id., at 13.] The court again clarified to Miller that two of the charges in question (Counts 10 and 11) were still in the case. Judge Whitaker asked if Miller understood this, and he answered affirmatively. [Id., at 13-14.] Miller then wished to confer with counsel and was allowed to do so. After the conference, Miller indicated that he wished to change the paperwork on the plea agreement to a "no contest" plea to Counts 10 and 11, although he was still going to plead guilty to Counts 4, 5 and 13. The court discussed with counsel and Miller the consequences of a no contest plea to Counts 10 and 11 and allowed them to confer outside of court before the plea would be taken. [Id. at 15.] Before recessing, the following exchange occurred between Miller and Judge Whitaker.

| Miller: | I do understand the significance of this case. |
|---|---|
| Court: | Uh-huh. |
| Miller: | And it is simply my perception in preferring to change my plea, not as an act of withdrawing any responsibility for it. It's just simply for the appearance of whether it would look – I guess for my record, I guess you could say. I'm not trying to admit that I'm right and the State is wrong, and I'm innocent. It's – it has nothing to do with that at all. I do understand my error. It's – that's not the case at all. |
| Court: | . . . . But for purposes of the Court accepting the plea and putting my signature on it, if I'm going to then provide any level of probation for you and treatment, you know, what you plea is important to me, as to whether or not that's going to be a consideration. So I, obviously, haven't made up my mind, one way or the other, about where we're going, sentencing-wise. If I accept the plea, you've capped me at eight years. Who knows, Mr. Miller? |

23

You may get the full eight; you may get a portion of it probated.  I don't know yet. . . . .

[Id., at 16-17.] The court then gave Miller and counsel time to confer outside the court.

60.     After the break, Judge Whitaker asked Miller and the attorneys what they decided to do.  The ADA stated they made some small amendments to the plea and disposition agreement, that Miller would plead guilty to the charges of criminal sexual contact of a minor, kidnapping and bribery of a witness.  He would plead no contest to two counts of sexual exploitation of a child (possession). [Id., at 18-19.] The court noted he would not go over Miller's rights again as he already had explained the rights to Miller.

61.     The court confirmed that Miller would plead guilty to Counts 4, 5 and 13 and no contest to Counts 10 and 11.  Miller stated that was his understanding. [Id., at 19.] Judge Whitaker again advised Miller he could go to trial should he elect to do so.  He then asked the State to lay a factual basis for the charges and the State did so. [Id., at 20-22.] Judge Whitaker asked defense counsel if she believed, based on her review and work on the case, that the State could present a prima facie case with respect to the factual basis of the charges.  Counsel stated she believed the State could do so.  With respect to Counts 10 and 11 regarding sexual exploitation, defense counsel specifically waived "some issues we would have with those two charges." [Id., at 22.]

62.     The court then asked Miller how he would plead to each of the counts.  He pled guilty to Counts 4, 5, and 13. [Id., at 23-24.] He pled no contest to Counts 10 and 11. [Id. at 24.] Judge Whitaker stated he accepted the pleas of guilty and the pleas of no contest as knowingly, voluntarily and intelligently made that morning before the court. [Id.] The court discussed sentencing and cautioned Miller if he violated his conditions of release "probably all sentencing agreements are off."  Miller understood.  The court then asked Miller if it had been explained to him, with respect

24

to the sexual exploitation charges of a minor, that they were designated as serious violent offenses for purposes of sentencing.  Miller stated he understood. [Id., at 25.] The court noted that the second-degree kidnapping charge was an optional serious violent charge giving the court an option to make a determination on the information it heard.  Miller stated he understood.

63.     When asked if he had any questions at that time, Miller stated he did not. [Id., at 26.]

64.     With respect to Miller's written plea agreement, signed June 14, 2010, the document provides that Miller and the State agreed that all counts "shall run consecutive to each other for a total term of twenty-one (21) years with a CAP of eight (8) years of incarceration at initial sentencing."  The Sentencing Agreement also states that the parties agreed Miller "shall not receive a Conditional Discharge, pursuant to this Agreement."  He was to be placed on an indeterminate period of probation between 5 and 20 years. [Doc. 13-1, Ex. G, at 2.] Miller signed this Agreement on June 14, 2010, stating he had read and understood the agreement.  He further agreed that he discussed the case and his constitutional rights with his attorney.  He understood what he was giving up by pleading guilty.  Miller agreed that he entered his plea according to the terms and conditions set forth in the agreement. [Id., Ex. B, at 4.] His attorney also signed the plea agreement, stating he discussed the case with his client in detail and believed the plea and disposition, as set forth, were appropriate under the facts of the case. [Id., at 5.] Nothing in the written Plea and Disposition Agreement promised Miller to a sentence less than what was stated.  Consistent with the Plea Agreement, Judge Whitaker sentenced Miller to a period of 8 years, or that "CAP" specified in the Plea Agreement.  Thirteen years of the total possible 21 year sentence were suspended, also consistent with the Plea Agreement. [Doc. 13-1, Ex. A.]

65.     Miller contends that he never gave up his claim of innocence.  Yet, during the plea hearing, he acknowledged that he was not claiming he was innocent and his plea of no contest was

not an act of "withdrawing any responsibility for it."  "I'm not trying to admit I'm right . . . and I'm innocent." [June 14 Plea Hearing Tr. at 17.]

66.     Miller claims he "adjusted" what he said at the plea hearing to what his counsel directed him to say.  However, the plea colloquy indicates that the court thoroughly explained Miller's rights to him and what he was giving up, and that Miller understood the proceeding, as well as well as the ramifications of the plea agreement.  Miller actively asked questions of the court, was allowed to confer with counsel off the record, and was granted additional time outside court to discuss with his attorney whether he wished to proceed with a plea or go to trial that day or the next, as scheduled.

67.     To the extent that Miller argues his attorney mislead him with respect to his possible sentence, there is no support for the contention.  The Plea Agreement provided an eight-year cap in it.  The court explicitly informed Miller at the June 14 proceeding that it was "capped" by an eight-year sentence in the plea agreement and that while the court might sentence Miller to the full eight years, it might probate part of the eight years.  Judge Whitaker further informed Miller that he had not made up his mind about sentencing at that point, without the benefit of the PSR.  The facts demonstrate the Miller knew he could be sentenced up to a maximum period of 8-years incarceration.

68.     There is no evidence to support Miller's conclusory allegation that he was coerced into pleading guilty or did not have time to consider the plea agreement.  Judge Whitaker informed Miller that he could proceed to trial that very day or the next day, as scheduled.  Moreover, Miller testified under oath that he was not coerced in any way in entering into the pleas of guilty and no contest.

69.     Miller failed to present any evidence that his pleas were the result of material misrepresentations made to him, promises that he would receive a sentence far shorter than the sentence actually imposed, false promises or guarantees, or any confusion or misunderstandings he had concerning the plea agreement.  The record shows that the State court carefully questioned Miller about the rights he was waiving and inquired into Miller's understanding of the rights he was waiving, including the right to go to trial, to confront witnesses, to put the State to the task of proving the allegations against him beyond a reasonable doubt, and to appeal.  The record also demonstrates that Miller was not threatened or coerced in his plea, and further that he was not under the influence of alcohol or drugs.  Miller acknowledged that he understood the charges against him, the terms of the Plea Agreement, that he had time to review the Agreement with his attorney, and that he signed the Agreement.

70.     Based on the express language of the Plea Agreement, signed by Miller, and the thorough plea colloquy conducted by the State court, this Court concludes that Miller voluntarily, intelligently, and knowingly entered into the pleas of guilty and no contest on June 14, 2010. Therefore, the Court recommends that this claim of "involuntary (cohoarsed) [sic] and unintelligent plea" be denied and dismissed, with prejudice.

## II.    CLAIMS FORECLOSED BY GUILTY AND NO CONTEST PLEAS

71.     Miller's claims of ineffective assistance of counsel, with respect to allegations of constitutionally deficient conduct that predated his guilty pleas, are foreclosed.  *See, e.g.,* Davis v. McEwen, 2012 WL 4510940, *9 (E.D. Cal. Sep. 28, 2012) (unpublished) (*citing* Tollett, 411 U.S. at 267) (to the extent the petitioner's claims of ineffective assistance of trial counsel predate the entry of the plea, they are foreclosed by the guilty plea).  That means, the allegations concerning trial counsel's failure to conduct investigative work, failure to obtain certain discovery or challenge the

State's factual basis of claims, inadequate witness interviews or failure to obtain favorable witness testimony, failure to raise speedy trial issues, and failure to use an expert are foreclosed. [Docs. 1, 19, 20.][9]  The Court will address below the remaining ineffective assistance of counsel claim that pertains to allegations that Miller's trial attorney provided deficient assistance during the plea negotiations and proceedings.   However, the Court recommends that all Miller's claims of ineffective assistance of counsel claims, with the one exception, be denied and dismissed, with prejudice.

72.     Miller separately alleges of "Non-Disclosure of Evidence," concerning either alleged failures on his trial attorney's part or by the State. [Doc. 1, at 7.] In addition, Miller alleges a separate claim of "Prosecutorial or Governmental Misconduct," with respect to speedy trial issues, failure to disclose evidence, loss of evidence, pretrial interview inconsistencies, and failure to substantiate the Indictment with evidence.  All of these allegations and claims concern activities or alleged failure to act by the State that predated Miller's voluntary and knowing pleas.  Thus, they are foreclosed, along with any other allegations or claims not identified here, that predated Miller's pleas.  Thus, the Court recommends that all Miller's claims of Non-Disclosure of Evidence and Prosecutorial/Government Misconduct be denied and dismissed, with prejudice.

73.     Miller also alleges a violation of his right to or demand for a speedy trial. [Doc. 1, at 12.] All allegations supporting this claim also predate Miller's voluntary, knowing,  and unconditional guilty pleas.  Therefore, the speedy trial claims are foreclosed.  *See* <u>Tollett</u>, 411 U.S. at 267 (unconditional plea of guilty waives all non-jurisdictional defects including Sixth Amendment

---

[9]Even if the Court did not identify each and every ineffective assistance of counsel allegation, as they appear in Miller's multiple and lengthy pleadings and motions, they are foreclosed to the extent that they pertained to pre-plea activities or alleged failures to act.

speedy trial claim).  Accordingly, the Court recommends that the speedy trial claims be denied and

dismissed, with prejudice.

## III.    DEFERENCE TO STATE COURT ADJUDICATIONS

74.    Even if the Court were to find that any or all of the above-described claims were not

foreclosed due to Miller's knowing, voluntary, and intelligent pleas of guilty and no contest, Miller

would not be entitled to relief under the standards set out under the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  An application for writ of habeas corpus

brought by an individual in custody pursuant to a judgment of a State court shall not be granted with

respect to any claim that was adjudicated on the merits in State court proceedings unless the

adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceedings.  28 U.S.C. § 2254(d).

> A federal habeas court may issue the writ under the 'contrary to'
> clause if the state court applies a rule different from the governing
> law set forth in our cases, or if it decides a case differently than we
> have done on a set of materially indistinguishable facts.  The court
> may grant relief under the 'unreasonable application' clause if the
> state court correctly identifies the governing legal principle from our
> decisions but unreasonably applies it to the facts of the particular
> case.  The focus of the latter inquiry is on whether the state court's
> application of clearly established federal law is objectively
> unreasonable, and . . . an unreasonable application is different from
> an incorrect one.

Allen v. Mullin, 368 F.3d 1220, 1234 (10th Cir. 2004) (citing Bell v. Cone, 535 U.S. 685, 694

(2002)), cert. denied, 543 U.S. 1156 (2005).  This means that a federal court is precluded from

granting habeas relief, except in the narrow circumstances described in § 2254(d), and that this

Court must apply a presumption that the factual findings of the State court are correct unless the

petitioner can rebut this presumption by clear and convincing evidence. Smallwood v. Gibson, 191 F.3d 1257, 1264-65 (10th Cir. 1999), *cert. denied*, 531 U.S. 833 (2000).

75.     To justify federal habeas relief, the decision of the State court must not only have been erroneous, but also unreasonable. Williams v. Taylor, 529 U.S. 362, 365, 376 (2000); Gipson v. Jordan, 376 F.3d 1193, 1196 (10th Cir. 2004), *cert. denied,* 546 U.S. 1030 (2005). "Federal habeas courts do not sit to correct errors of fact or to relitigate state court trials. Our jurisdiction is limited to ensuring that individuals are not imprisoned in violation of the Constitution." Thompson v. Oklahoma, 202 F.3d 283 (Table, Text in Westlaw), No. 98-7158, 2000 WL 14404, at *6 (10th Cir. Jan. 10, 2000) (unpublished), *cert. denied,* 530 U.S. 1265 (2000).

76.     Here, Miller did not show that any of Judge Whitaker's numerous on-the-merits adjudications of his claims resulted in decisions that were (1) contrary to or an unreasonable application of clearly established federal law; or (2) based on an unreasonable determination of the facts in light of the evidence presented. The Court presumes the State court's factual findings were correct, and Miller failed to present any evidence to the contrary. Therefore, under AEDPA standards, the Court additionally, or alternatively, recommends that all of the above-discussed claims be denied and dismissed, with prejudice.

## IV.     INEFFECTIVE ASSISTANCE OF COUNSEL AS IT RELATED TO THE PLEA

77.     Miller's sole remaining claim is alleged ineffective assistance of counsel as it purportedly implicated the voluntariness of his pleas. In evaluating this claim, the Court applies the standards set out in Strickland v. Washington, 466 U.S. 668 (1984). *See* Lafler v. Cooper, 132 S.Ct. 1376, 1384, 1390-91 (2012) (Court applies Strickland to assess a claim of ineffective assistance of counsel arising out of the plea negotiation process).

78.     When a habeas petitioner challenges guilty plea on the ground that he was denied his Sixth Amendment right to effective assistance of counsel, he must satisfy two criteria to show entitlement to relief.  United States v. Weeks, 653 F.3d 1188, 1200-01 (10th Cir. 2011).  First, he is required to show that her attorney's representation "fell below an objective standard of reasonableness."  Id. (citing Strickland, 466 U.S. at 688).  Second,  he "must show that the [attorney's] deficient performance prejudiced the defense."  Id. (citation omitted).  See also Hill v. Lockhart, 474 U.S. 52, 56–58 (1985) (the two-pronged  approach applies to the plea bargaining process).  To demonstrate the second prong of prejudice, Miller "must show that there is a reasonable probability that, but for the counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial."  Weeks, 653 F.3d at 1201 (citation omitted).

79.     The Court may address the performance and prejudice components in any order and need not address both if it concludes that the defendant failed to satisfy demonstrating one of the two prongs.  United States v. Gonzalez, 596 F.3d 1228, 1233 (10th Cir.), cert. denied, ⸺ U.S. ⸺, 131 S.Ct. 172, 178 L.Ed.2d 102 (2010).  See also Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed," and counsel's performance does not need to be assessed.")

80.     In Strickland, the United States Supreme Court emphasized that judicial scrutiny of counsel's performance must be highly deferential.  An adverse result is not evidence of ineffective assistance, and a court should not second-guess counsel's representation after an adverse verdict or sentence.  An attorney's performance should be evaluated from counsel's perspective at the pertinent time, giving due regard to counsel's trial tactics and strategy, and thereby eliminating any distorting effects of 20/20 hindsight.  A court must indulge a strong presumption that counsel's conduct was

31

reasonable and could have been considered sound trial strategy.  Id. at 689.  The defendant has the

burden of proof to overcome that presumption.  United States v. Cronic, 466 U.S. 648, 658 (1984).

81.     Miller claims his trial attorney used "threats, false promises, and a mis-representation

of the facts of the case" to "coerce" Miller into signing the June 14, 2010 Plea Agreement. [Doc. 19,

at 14, ¶ 38.] According to Miller, his attorney told him that he faced 64 years in prison if Miller

chose to go to trial, that Miller was "on his own," if he proceeded to trial, and that there was a

"90%" chance of losing at trial, based on trial counsel's prior record of losing 12 separate cases

involving sex offense charges. [Id., at ¶ 39.]

82.     Other than conclusory, unsupported allegations, Miller fails to produce evidence

demonstrating his trial attorney's representation of him during the plea process fell below an

"objective standard of reasonableness."  There is no evidence that his attorney made threats, false

promises or misrepresentations.  The Plea Agreement, read, understood, and signed by Miller,

expressly states that Miller could have faced 21 years of incarceration, but that by agreeing to the

plea negotiation, his sentence was capped at 8 years.  Judge Whitaker reiterated that the parties

agreed the counts would run consecutive to each other for a total term of 21 years, with a cap of

eight years. [June 14 Plea Tr., at 3.]  Had Miller gone to trial, at a minimum, he risked serving an

additional 13 years in prison.  Moreover, it is unclear, had Miller gone to trial and been found guilty,

whether he might have been sentenced to a longer period than 21 years of incarceration.

83.     Even if established as true, trial counsel's allegedly inaccurate projection that Miller

could face up to 64 years of incarceration, if found guilty, that does not render a plea involuntary.

Laycock v. State of N.M., 880 F.2d 1184, 1186 (10th Cir. 1989) ("Although an attorney's unfair

representation of probable leniency may be found coercive, an erroneous estimate of sentence does

not render the plea involuntary.") Moreover, the fact, if established, that Miller's attorney had not

been successful in 12 previous cases involving sex offense charges does not amount to a misrepresentation or coercion. It was simply information that Miller could weigh in determining whether to proceed to trial on multiple charges involving criminal sexual contact and exploitation of a child.

84.    Miller failed to satisfy his burden in demonstrating either prong of the Strickland test. There is no evidence that his trial attorney's performance during plea negotiations fell below an objective standard of reasonableness, and there is no evidence that Miller would have insisted on proceeding to trial but for his attorney's alleged deficient performance. This is especially true here where Judge Whitaker was ready to go to trial, as scheduled, on June 14 or 15, 2010, and offered Defendant that option. However, the record demonstrates that Miller elected to accept the plea offer and testified under oath that his guilty and no contest pleas were not the product of coercion or threats. *See, e.g.,* United States v. Jameson, 2012 WL 2402650, at *1 n. 6 (10th Cir. June 27, 2012) (unpublished) (petitioner did not assert "reasonable probability that, but for counsel's [actions or omissions], he would not have pleaded guilty and would have insisted on going to trial," a necessary part of any showing of prejudice.) (citation omitted).

85.    Furthermore, Miller did not acknowledge the significant benefits he received from having pled guilty or no contest to the charges, as weighed against the risks of a much longer period of incarceration he faced if he had proceeded to trial.

86.    Because Miller failed to satisfy either of the Strickland criteria for ineffective assistance of counsel claims, the Court recommends that the claim be denied and dismissed, with prejudice.

87.    In addition, or alternatively, the Court further finds that Miller did not rebut the presumption of correctness due the State courts' factual determinations and failed to demonstrate

that Judge Whitaker's numerous denials of motions to withdraw plea agreement and habeas petitions, in which Miller raised these same claims, were contrary to, or involved an unreasonable application of, clearly established federal law.  Nor did Miller demonstrate that the State court's rulings were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  Indeed, Judge Whitaker expressly found that Miller testified that he was "not being pressured, feeling forced or coerced and in fact indicated, on the record, that he was entering the [plea] agreement of his own volition." [Doc. 13, Ex. G, at 1-2.] In accordance with 28 U.S.C. § 2254(d), the Court, therefore, recommends that the ineffective assistance of counsel claim, as it relates to the plea negotiation process, be denied and dismissed, with prejudice.

### Order

The Court grants Miller's unopposed Motion to Correct Pleadings [Doc. 24.]

### Recommended Disposition

That Defendant's Motion to be Dismissed be GRANTED, as described herein.

That Jasen Rome Miller's Petition for Writ of Habeas Corpus [Doc. 1] and all claims filed in this matter, be denied, and that this action be dismissed, with prejudice.

That under Rule 11 of the Rules Governing Section 2254 cases, the Court recommends *sua sponte* that a certificate of appealability not issue because Miller failed to make a substantial showing that he has been denied a constitutional right.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge